Case 3:16-cv-00329   Document 83   Filed on 04/06/20 in TXSD   Page 1 of 20

United States District Court
Southern District of Texas
**ENTERED**
April 06, 2020
David J. Bradley, Clerk

# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF TEXAS
# GALVESTON DIVISION

No. 3:16-cv-00329

ATAIN SPECIALTY INSURANCE COMPANY, *PLAINTIFF*,

v.

GALVESTONIAN CONDOMINIUM ASSOCIATION, INC., NICK C. CARDIAS, DAVID L. HARSHBARGER, ROBERTO H. VAN DE WYNGARD, YUSHA ABOUHALKAN, REBECCA J. FAULCONER, GAIL ANN PRATHER, GREG CLARK, AND J. RAY RILEY, *DEFENDANTS*.

## MEMORANDUM OPINION AND ORDER

JEFFREY VINCENT BROWN, UNITED STATES DISTRICT JUDGE.

This is a declaratory-judgment action in which Atain Specialty Insurance Company seeks a declaration that no coverage exists, it has no duty to provide a defense, and it has no duty to provide indemnity to, or pay for any judgment rendered against, its insureds for claims made against them in Cause No. 2016-04629, *J. Ray Riley v. Nick C. Cardias, et al.*, in the 281st Judicial District Court of Harris County, Texas.

Before the court are Atain's motions for summary judgment and for leave to file a supplemental brief in support of its motion for summary judgment. Dkts. 68 and 78. For the reasons explained below, Atain's motion for summary judgment is denied and its motion for leave is denied as moot.

1

## I. Background and Procedural History

This case involves a messy insurance-coverage dispute, at the center of which is J. Ray Riley, a licensed attorney and condominium owner at The Galvestonian. Beginning in January 2016, Riley embarked on a course of blitzkrieg-style litigation in Texas state court. Filing voluminous pleadings, he asserted dozens of causes of action and sought millions of dollars in damages—as well as other, non-monetary relief—against the Galvestonian Condominium Association, Inc. (a non-profit property owners' association for The Galvestonian's residents), the association's board members,[1] and the association's former general manager, Greg Clark (individual defendants are collectively referred to as "directors and officers").[2]

The litigation was precipitated by an association-run condo-rental program used by a minority of The Galvestonian's property owners. The association managed the rental arrangements for those owners who participated in the program, with the association receiving a portion of the rent collected. Other owners, including Riley, who were not members of the rental program, rented their units outside of the program, either personally or through a leasing agent or

---

[1] Riley named the following board members as defendants in his state lawsuit: Nick Cardias, David Harshbarger, Roberto Van de Wyngard, Brenda Rubenstein, Yusha Abouhalkah, Rebecca Joyce Faulconer, and Gail Ann Prather.

[2] Riley originally proceeded *pro se* with the assistance of his wife (who is also an attorney) but later retained trial counsel.

website. Outside renters did not share any percentage of their rental fee with the association.

Due to the rental program's popularity, as well as a concern that renting too many units was harming or could harm other condominium owners' use and enjoyment of the property, the association's board voted to limit the participation in the rental program to 40% of units owned. Owners who were not part of the program but wanted to join were placed on a waiting list until another owner left the program or sold his or her unit. In addition, though the association did not explicitly prohibit the renting of units outside the program, owners who did so were subject to a fine—$100 for the first offense and $200 for each subsequent offense. Atain App'x at 006.

When stripped of his pleadings' hyperbolic rhetoric, Riley's lawsuit essentially alleges a conspiracy, spearheaded by the association and its directors and officers. The conspiracy's objective, Riley contends, is to restrict competition and monopolize the rental of The Galvestonian's condominium units by fixing prices and excluding most owners from participating. *See* Atain App'x at 001-030.

After Riley sued them, the association and its directors and officers sought a defense from Atain, which carried the association's D&O insurance policy. *See* Dkt. 1. Atain agreed to provide a defense, subject to a reservation of rights. *See id.*

In Riley's seventh amended petition—the live petition at the time the case proceeded to trial—he alleges causes of action for negligence, gross negligence, multiple violations of the Texas Free Enterprise and Antitrust Act and Texas

3

Uniform Condominium Act, various breaches of the association's Declaration of Condominium and its incorporated bylaws (collectively "the declaration"), civil conspiracy, and breach of fiduciary duty. Riley also seeks to recover his costs and attorneys' fees; requests that the trial court appoint a receiver "to protect the Association and its members" from the alleged "illegal, oppressive, or fraudulent conduct"; and enjoin the defendants from implementing or enforcing certain of The Galvestonian's rules. *See* Atain App'x at 001-030.

## A. Result of the Lawsuit in State Court

Before trial, the parties filed cross-motions for partial summary judgment related to Riley's claims for the alleged breaches of the declaration's restrictive covenants. The trial court granted summary judgment in Riley's favor as to two of his nine claims for alleged breaches.[3] Specifically, the court found: (1) the association's 40% cap on the number of units that may participate in its rental program violated the declaration; and (2) the association could not impose fees on owners who rent outside the rental program because the declaration does not provide the association with the authority to impose fees other than a *pro rata* common expense charge. *See* Atain App'x at 092.

The case proceeded to trial on September 10, 2018. During the trial, Riley nonsuited his claims against the directors and officers for breaches of the

---

[3] The trial court also noted that "[T]he Galvestonian may not enforce arbitrary, capricious, or discriminatory rules." But the court elected to present to the jury the remaining alleged breaches of the declaration's restrictive covenants. *See* Atain App'x at 093; *see also* Atain App'x at 033.

4

declaration's restrictive covenants. Atain App'x at 093. At the close of Riley's evidence, the trial court granted the defendants' motion for directed verdict on "some"[4] of Riley's causes of action but determined the remainder must be submitted to the jury. *See id.*

On September 19, the jury returned a verdict for the association and its directors and officers on all remaining counts, save for finding that the association's practice of charging an independent rental owner more than owners who participated in the rental program for rush housekeeping services was arbitrary, capricious, or discriminatory. *See* Atain App'x at 077–086.

Both sides filed motions to disregard certain jury findings that the trial court implicitly overruled when it entered a final take-nothing judgment against Riley. Atain App'x at 092–095; *see* Atain App'x at 041–068. On December 25, Riley moved to modify the final judgment, requesting the court (1) award Riley mandatory attorneys' fees; (2) tax costs against the association because Riley obtained a judgment on a civil claim; and (3) award damages resulting from the association charging excessive service fees for rush housekeeping services. Atain App'x at 096–114. On December 27, the trial court denied all of Riley's proposed modifications. Atain App'x at 115.

---

[4] Neither party has put forth a real effort to explain the proceedings in state court, leaving this court to guess as to which causes of action the trial court directed a verdict.

5

Riley has appealed the trial court's final judgment.[5] The court takes judicial notice that the appeal is still pending. Fed. R. Evid. 201(c)(1); *see Taylor v. Charter Med. Corp.*, 162 F.3d 827, 829–31 (5th Cir. 1998) (noting that courts take judicial notice of the filings in another court "to establish the fact of such litigation and related filings").

### B. Proceedings in This Court

On November 21, 2016, Atain filed its underlying complaint seeking a declaration that: (1) the claims made in the state lawsuit are not covered by the policy; (2) Atain has no duty to defend the association or its directors and officers for the claims asserted against them in the state lawsuit; and (3) Atain has no duty to indemnify the association, its directors and officers, or "any person or entity that obtains a judgment against the association" in the state lawsuit. Dkt. 1 at 9–10.[6]

On February 27, 2018, the parties jointly moved for a stay pending the state-court trial, which the court granted. Dkts. 51 and 52. On the parties joint motion, the court reinstated the case in February 2019.[7] On March 22, Atain moved for summary judgment, urging the court to "rule, as a matter of law, on the duty to

---

[5] *J. Ray Riley v. Nick C. Cardias, et al.*, Case No. 01-19-00114-CV, in Texas' First Court of Appeals. The association and its directors and officers filed a cross-appeal, challenging the partial summary judgment entered against them on Riley's claims that the association's 40% cap on rental-program participants and its fee for owners who rented outside the program violated the declaration. They also seek a determination that they are entitled to attorneys' fees as the prevailing party on Riley's contract claims.

[6] Page-number citations to the documents that the parties have filed refer to those that the court's electronic case-filing system automatically assigns.

[7] Atain moved for summary judgment before the court stayed the case. Dkt. 45. After the parties moved to reinstate the case, the court denied that motion as moot. Dkt. 65.

6

defend and, if the Court feels it is appropriate, to also rule on the duty to indemnify." Dkt. 68 at 11. In reaching its decision on its duty to defend, Atain requests that the court consider extrinsic evidence. *Id.*

Atain gives numerous reasons why Riley's claims are not covered. But all its arguments are premised on the notion that Riley has abandoned most of his claims—specifically his claims for negligence and gross negligence—on appeal. *See* Dkt. 68. Nevertheless, whether some of Riley's claims are adjudicated and final is immaterial to the court's duty-to-defend analysis. And because the court concludes that Atain does have an ongoing duty to defend the association and its directors and officers in the state-court litigation, the court cannot, as a matter of law, reach the question of whether Atain has a duty to indemnify.

## II. Applicable Principles of Insurance Law

Because this suit is in federal court on the basis of diversity jurisdiction, the court must apply Texas law to any substantive issues. *Citigroup Inc. v. Fed. Ins. Co.*, 649 F.3d 367, 371 (5th Cir. 2011) (citing *Erie R.R. v. Tompkins*, 304 U.S. 64, 58 (1938)). The motion for summary judgment, however, is decided using the procedures established by the Federal Rules of Civil Procedure. *Barrett Computer Servs., Inc. v. PDA, Inc.*, 884 F.2d 214, 217 n.3 (5th Cir. 1989).

### A. Burden of Proof of Contract Interpretation

In general, the insured bears the initial burden of establishing that coverage is potentially provided by the applicable insurance policy, while it is the insurer's burden to prove the applicability of an exclusion permitting it to deny coverage.

7

Tex. Ins. Code § 554.002; *Venture Encoding Serv., Inc. v. Atl. Mut. Ins. Co.*, 107 S.W.3d 729, 733 (Tex. App.—Fort Worth 2003, pet. denied); *see Trinity Universal Ins. Co. v. Emp'rs Mut. Cas. Co.*, 592 F.3d 687, 691–92 (5th Cir. 2010) ("Although the burden is typically 'on the insured to show that a claim against him is potentially within the scope of coverage under the policies,' when 'the insurer relies on the policy's exclusions, it bears the burden of proving that one or more of those exclusions apply.'" (citation omitted)). If the insurer is successful, the burden shifts back to the insured to prove that an exception to the exclusion applies. *Guar. Nat'l Ins. Co. v. Vic Mfg. Co.*, 143 F.3d 192, 193 (5th Cir. 1998).

Under Texas law, courts construe insurance policies according to the rules governing contract construction. *Am. Mfrs. Mut. Ins. Co. v. Schaefer*, 124 S.W.3d 154, 157 (Tex. 2003). In construing the terms of the contract, the court's primary concern is to give effect to the written expression of the parties' intent. *Forbau v. Aetna Life Ins. Co.*, 876 S.W.2d 132, 133 (Tex. 1994). Courts are to read all provisions within the contract as a whole and give effect to each term so that no part of the agreement is left without meaning. *MCI Telecomms. Corp v. Tex. Utils. Elec. Co.*, 995 S.W.2d 647, 652 (Tex. 1999); *see Provident Life & Accident Ins. Co. v. Knott*, 128 S.W.3d 211, 216 (Tex. 2003) ("[W]e must read all parts of each policy together and exercise caution not to isolate particular sections or provisions from the contract as a whole."). "Terms in contracts are given their plain, ordinary, and generally accepted meaning unless the contract itself shows that particular

definitions are used to replace that meaning." *Bituminous Cas. Corp. v. Maxey*, 110 S.W.3d 203, 208 (Tex. App.—Houston [1st Dist.] 2003, pet. denied).

### B. Duty to Defend

An insurer may have two responsibilities relating to coverage—the duty to defend and the duty to indemnify. *See D.R. Horton-Tex., Ltd. v. Markel Int'l Ins. Co.*, 300 S.W.3d 740, 743 (Tex. 2009). The two duties are distinct and are decided separately. *Id.*

An insurer is required to defend only those cases within the policy coverage. *Fid. & Guar. Ins. Underwriters, Inc. v. McManus*, 633 S.W.2d 787, 788 (Tex. 1982). In determining whether there is a duty to defend, courts applying Texas law follow the "eight-corners rule." *Gilbane Bldg. Co. v. Admiral Ins. Co.*, 664 F.3d 589, 596 (5th Cir. 2011). Under the eight-corners rule, courts look to the allegations in the pleadings in "light of the policy provisions without reference to the truth or falsity of such allegations and without reference to what the parties know or believe the true facts to be, or without reference to a legal determination thereof." *Heyden Newport Chem. Corp. v. S. Gen. Ins. Co.*, 387 S.W.2d 22, 24 (Tex. 1965); *see Trinity Universal Ins. Co.*, 592 F.3d at 691.

A duty to defend arises if the allegations in the pleadings are "potentially" covered by the policy. *Zurich Am. Ins. Co. v. Nokia, Inc.*, 268 S.W.3d 487, 491 (Tex. 2008); *Heyden*, 387 S.W.2d at 24. It "is not affected by facts ascertained before suit, developed in the course of litigation, or by the ultimate outcome of the suit." *Nokia*, 268 S.W.3d at 491. In determining whether an insurer's duty to defend is

9

triggered by a lawsuit's factual allegations, the court "examin[es] the latest, and only the latest, amended pleadings." *St. Paul Fire & Marine Ins. Co. v. Giganews, Inc.*, 193 F. Supp. 3d 745, 747 n.1 (W.D. Tex. 2016). As long as one claim or allegation in the pleadings is potentially covered by the insurance policy, the insurer must defend the entire suit. *Nokia*, 268 S.W.3d at 491.

If there is any doubt as to whether the allegations in the complaint state a claim that is covered by the policy, such doubt is resolved in favor of the insured. *Id.* ("We resolve all doubts regarding the duty to defend in favor of the duty . . . and we construe the pleadings liberally"); *Heyden*, 387 S.W.2d at 26. In sum, Texas courts resolve all doubts regarding a duty to defend exists in favor of the insured. *King v. Dall. Fire Ins. Co.*, 85 S.W.3d 185, 187 (Tex. 2002).

### C. Duty to Indemnify

An insurer's duty to indemnify is narrower than its duty to defend and "generally cannot be ascertained until the completion of litigation, when liability is established, if at all." *Colony Ins. Co. v. Peachtree Constr., Ltd.*, 647 F.3d 248, 253 (5th Cir. 2011); *St. Paul Ins. Co. v. Texas Dep't of Transp.*, 999 S.W.2d 881, 884 (Tex. App.—Austin 1999, pet. denied). This is because, unlike the duty to defend, which turns on the pleadings, the duty to indemnify is triggered by the actual facts establishing liability in the underlying suit, and whether any damages caused by the insured and later proven at trial are covered by the terms of the policy. *Peachtree Constr.*, 647 F.3d at 253. Thus, "an insurer may have a duty to defend but, eventually, no duty to indemnify." *Farmers Tex. Cty. Mut. Ins. Co. v. Griffin*,

955 S.W.2d 81, 82 (Tex. 1997) ("[A] plaintiff pleading both negligent and intentional conduct may trigger an insurer's duty to defend, but a finding that the insured acted intentionally and not negligently may negate the insurer's duty to indemnify."). Alternatively, "an insurer may have a duty to indemnify its insured even if the duty to defend never arises." *D.R. Horton-Tex., Ltd.*, 300 S.W.3d at 741.

Because of this potentiality, courts are generally prohibited from determining whether a duty to indemnify exists before the conclusion of the underlying litigation against the insured.[8] *Westport Ins. Corp. v. Atchley, Russell, Waldrop & Hlavinka, L.L.P.*, 267 F. Supp. 2d 601, 626 (E.D. Tex. 2003) (citations omitted); *see also Klein v. O'Neal, Inc.*, CIV.A. 7:03-CV-102-D, 2009 WL 3573849, at *5 (N.D. Tex. Oct. 30, 2009) ("[W]hen the court determines that there is a duty to defend, a ruling on the duty to indemnify is premature." (quoting *Gehan Homes, Ltd. v. Employers Mut. Cas. Co.*, 146 S.W.3d 833, 846 (Tex. App.—Dallas 2004, pet. denied))); *Northfield Ins. Co. v. Loving Home Care, Inc.*, 363 F.3d 523, 537 (5th Cir. 2004) (when a duty to defend exists, courts "not only ha[ve] discretion to refuse to decide the duty-to-indemnify issue, but Texas law clearly indicate[s] that

---

[8] Courts may determine whether an insurer has a duty to indemnify before the conclusion of the underlying litigation in one, narrowly confined situation that is not applicable here: "[I]t is appropriate only when the duty[-]to[-]defend analysis, which looks exclusively to the eight corners of the state[-]court petition and the policy, indicates that no set of alleged facts would provide coverage, and because of *the very same reasons*, no duty to indemnify could arise." *Westport Ins. Corp. v. Atchley, Russell, Waldrop & Hlavinka, L.L.P.*, 267 F. Supp. 2d 601, 626 (E.D. Tex. 2003) (emphasis in original); *see Northfield Ins. Co. v. Loving Home Care, Inc.*, 363 F.3d 523, 529 (5th Cir. 2004) ("Generally, Texas law only considers the duty-to-indemnify question justiciable after the underlying suit is concluded, unless '*the same reasons that negate the duty to defend likewise negate any possibility that the insurer will have a duty to indemnify.*'" (emphasis in original) (citation omitted)).

[a court] would err by doing so because the underlying litigation was not complete.").

## III. Summary Judgment

Under Federal Rule of Civil Procedure 56(a), "[a] party may move for summary judgment, identifying each claim or defense—or the part of each claim or defense—on which summary judgment is sought. The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party bears the initial burden of informing the court of the basis for its motion by identifying portions of the record which highlight the absence of genuine issues of material fact. *Topalian v. Ehrman*, 954 F.2d 1125, 1132 (5th Cir. 1992). If the dispositive issue is one on which the nonmoving party will bear the burden of proof at trial, the moving party may satisfy its burden by merely pointing out that the evidence in the record is insufficient with respect to an essential element of the nonmoving party's claim. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986).

A fact is "material" if proof of its existence or nonexistence would affect the outcome of the lawsuit under applicable law in the case. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute about a material fact is "genuine" if the evidence is such that a reasonable factfinder could render a verdict for the nonmoving party. *Id.* In other words, "[t]he mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported

motion for summary judgment." *State Farm Life Ins. Co. v. Gutterman*, 896 F.2d 116, 118 (5th Cir. 1990). When considering a motion for summary judgment, the court must consider all evidence in the light most favorable to the nonmoving party, *Gremillion v. Gulf Coast Catering Co.*, 904 F.2d 290, 292 (5th Cir. 1990), and resolve all reasonable doubts about the facts in favor of the nonmoving party. *Cooper Tire & Rubber Co. v. Farese*, 423 F.3d 446, 455–56 (5th Cir. 2005).

If the moving party meets its initial burden, the burden then shifts to the nonmoving party to establish the existence of a genuine issue of material fact for trial. *Norman v. Apache Corp.*, 19 F.3d 1017, 1023 (5th Cir. 1994). In evaluating the evidence tendered by the parties, the court must accept the evidence of the nonmovant as credible and draw all justifiable inferences in its favor. *Anderson*, 477 U.S. at 255. However, "a party cannot defeat summary judgment with conclusory allegations, unsubstantiated assertions, or only a scintilla of evidence." *Turner v. Baylor Richardson Med. Ctr.*, 476 F.3d 337, 343 (5th Cir. 2007) (citing *Anderson*, 477 U.S. at 248); *see Isquith ex rel. Isquith v. Middle S. Utils.*, 847 F.2d 186, 198 (5th Cir. 1988) ("[O]nce a party moving for summary judgment successfully discharges its initial burden, the nonmoving party must 'go beyond the pleadings and . . . designate specific facts showing that there is a genuine issue for trial.'" (quoting *Celotex*, 477 U.S. at 324)).

## IV. Discussion

### A. The Policy

The relevant and operative terms of the underlying policy are as follows:

**INSURING AGREEMENTS**

**I.   COVERAGE**

The **COMPANY** will pay on behalf of the **INSURED** all **LOSS** excess of the Retention not exceeding the limit of liability for which this coverage applies which the **INSUREDS** shall be legally obligated to pay as a result of any **CLAIM** made against the **INSURED** due to a **WRONGFUL ACT** . . .

\*\*\*

**IV.   DEFINITIONS**

\*\*\*

[B.]   **CLAIM** means any demand made upon the **INSURED** for monetary damages, whether formal or informal, written or oral, as a result of a **WRONGFUL ACT**.

\*\*\*

[I.]   **LOSS** means any amount which the **INSURED** is legally obligated to pay or which the **ENTITY** shall be required or permitted by law to pay or for any **CLAIM** or **CLAIMS** made against them for **WRONGFUL ACTS** and shall include but not be limited to monetary damages, judgments and settlements. **LOSS** shall not include fines or penalties imposed by law . . .

\*\*\*

[M].   **WRONGFUL ACT** means any actual or alleged negligent act, error or omission, misstatement, misleading statement, or breach of duty committed by an **INSURED** in the performance of duties on behalf of the **ENTITY**.

Atain App'x at 132–133.

### B. Whether Atain Has a Duty to Defend its Insureds

### 1. The Eight-Corners Rule

Atain asks the court to "consider extrinsic evidence in making its ruling, if the [c]ourt feels such consideration is appropriate." Dkt. 68 at 11. Specifically, Atain requests the court "consider extrinsic evidence in the form of documents associated with the [association] and cited by R[iley] in his [state-court lawsuit] in order to determine if the duty to defend" exists. *Id.* at 15. Atain does not identify the "documents" to which it refers, but the court presumes it to be The Galvestonian's declaration.

Courts have inconsistently applied exceptions to the eight-corners rule. One commonly cited exception is derived from the Fifth Circuit's opinion in *Northfield Insurance Co. v. Loving Home Care, Inc.* 363 F.3d 523, 531 (5th Cir. 2004). That exception allows extrinsic evidence bearing on the duty to defend when: (1) "it is initially impossible to discern whether coverage is potentially implicated"; and (2) "the extrinsic evidence goes solely to a fundamental issue of coverage which does not overlap with the merits of or engage the truth or falsity of any facts alleged in the underlying case." *Id.* Several Texas courts of appeals have adopted the Fifth

Circuit's approach (or something similar),[9] while others have declined to do so.[10] The Texas Supreme Court, however, has never expressly adopted this two-pronged exception.

Noting the Texas Supreme Court's silence on the issue, the Fifth Circuit recently certified to the Texas Supreme Court the following question: "Is the policy-language exception to the eight-corners rule articulated in *B. Hall Contracting Inc. v. Evanston Ins. Co.*, 447 F. Supp. 2d 634 (N.D. Tex. 2006), a permissible exception under Texas law?" *State Farm Lloyds v. Richards*, —— F. App'x ——, 2019 WL 4267354, *3 (5th Cir. Sept. 9, 2019).[11]

---

[9] *See, e.g., Weingarten Realty Mgmt. Co. v. Liberty Mut. Fire Ins. Co.*, 343 S.W.3d 859, 865 (Tex. App.—Houston [14th Dist.] 2011, pet. denied) ("we are persuaded of the need for a very narrow exception to the eight-corners rule. . . . Under this exception, the extrinsic evidence must go strictly to an issue of coverage without contradicting any allegation in the third-party claimant's pleadings material to the merits of that underlying claim"); *Urethane Int'l Prod. v. Mid-Continent Cas. Co.*, 187 S.W.3d 172, 176 (Tex. App.—Waco 2006, no pet.) ("An exception to [the eight-corners] rule occurs when the petition in the underlying lawsuit does not allege facts sufficient for a determination of whether those facts, even if true, are covered by the policy." (quotations omitted)); *Tucker v. Allstate Tex. Lloyds Ins. Co.*, 180 S.W.3d 880, 884–85 (Tex. App.—Texarkana 2005, no pet.) ("where the terms of the policy are ambiguous, or where the petition in the underlying suit does not contain factual allegations sufficient to enable the court to determine whether the claims are within the policy coverage, the court may consider extrinsic evidence to assist it in making the determination").

[10] *See, e.g., AIX Specialty Ins. Co. v. Shiwach*, 05-18-01050-CV, 2019 WL 6888515, at *7 (Tex. App.—Dallas Dec. 18, 2019, pet. filed) ("Although the Fifth Circuit and multiple intermediate appellate courts have expressly recognized a limited exception to this rule, permitting consideration of extrinsic evidence when relevant only to the coverage issue, the Texas Supreme Court and this Court have not yet done so."); *USAA Texas Lloyd's Co. v. Doe*, 04-15-00673-CV, 2017 WL 2791327, at *3 (Tex. App.—San Antonio June 28, 2017, pet. denied); *AccuFleet, Inc. v. Hartford Fire Ins. Co.*, 322 S.W.3d 264, 273 (Tex. App.—Houston [1st Dist.] 2009, no pet.) ("We decline to create an exception to the eight[-]corners rule under the facts of this case . . .").

[11] In *Richards*, a 10-year-old boy died in an ATV accident while staying at his grandparents' house. *See Richards*, 2019 WL 4267354, at *1. The boy's mother sued the grandparents (the Richards), who had a homeowners' insurance policy issued by State Farm. *See id.* The policy contained two potentially applicable exclusions. The first excluded "coverage for bodily injury arising from the use of an ATV while off the Richards' premises"—the state-court petition did not state whether

16

The court has carefully considered whether it should wait to rule until the Texas Supreme Court has answered the certified question in *Richards*. But even if Texas law recognizes such an exception, it would not apply here because "it is not *impossible* to discern whether coverage under the policy is *potentially* implicated by the allegations [in Riley's state-court petition]." *See Everest Nat'l Ins. Co. v. Gessner Eng'g, LLC*, 325 F. Supp. 3d 760, 766 (S.D. Tex. 2018) (Atlas, J.) (emphasis in original); *see generally W. Heritage Ins. Co. v. River Entm't*, 998 F.2d 311, 314–15 (5th Cir. 1993) (considering extrinsic evidence demonstrating the cause of defendant's "impairment" was intoxication—which triggered the policy's liquor-liability exclusion—because it was impossible, based on the vague allegations in the complaint, to determine the basis of the defendant's impairment); *Ooida Risk Retention Group, Inc. v. Williams*, 579 F.3d 469, 476 (5th Cir. 2009) (considering extrinsic evidence to determine whether the deceased was a tandem-truck driver because coverage depended on applicability of fellow-employee exclusion).

---

the accident occurred on or off the grandparents' property. *See id.* The second excluded coverage was for bodily injury to the "insured" which the policy defined to include relatives "if residents of your household"—there was no allegation in the state-court petition that the boy resided with his grandparents. *See id.* at 2. Neither the district court nor the Fifth Circuit inferred facts not included in the state-court petition to answer these two coverage issues. Instead, the Fifth Circuit certified to the Texas Supreme Court the issue regarding whether there is a recognized exception to the eight-corners rule that would allow consideration of extrinsic evidence.

## 2. Whether the Allegations in Riley's State-Court Petition Are *Potentially* Covered Under the Policy

Without question, Riley's claims for negligence implicate Atain's duty to defend. Atain App'x at 023–024 (alleging the directors and officers were negligent in their management of the association-run rental program); Atain App'x at 133 (defining "wrongful act" as "any actual or alleged negligent act, error or omission, misstatement misleading statement, or breach of duty committed by an INSURED in the performance of duties on behalf of the ENTITY."); *see also Maxey*, 110 S.W.3d at 208 ("Terms in contracts are given their plain, ordinary, and generally accepted meaning unless the contract itself shows that particular definitions are used to replace that meaning."). In fact, Atain seemingly agrees that the negligence claim, alone, triggered its duty to defend.[12]

Still, Atain asks this court to hold it has no duty to defend its insured. The gravamen of Atain's argument is that the court should exclude Riley's negligence claims from its inquiry into Atain's duty to defend because the jury found that no negligence proximately caused Riley's alleged injuries, Atain App'x at 035, and Riley has abandoned his negligence claims on appeal. *See* Dkt. 68 at 15–21. According to Atain, because the negligence claims are adjudicated and final, the court should limit its inquiry to whether the policy excludes Riley's other claims.

---

[12] *See* Dkt. 68 at 27 ("[S]ince the remai[n]ing claims in the judgment [that are pending on appeal] involve allegations of intentional and not negligent conduct on the part of the [association], coverage would not exist under the [insurance policy] *for any of the remaining claims* . . . because the definition of 'Wrongful Act', [sic] and A[tain] has no duty to defend the [association] in the appeal or indemnify the [association] for the remaining parts of the judgment." (emphasis added)).

18

*See id.* at 15–31 (citing the policy's exclusions of coverage for contractual claims and claims for nonmonetary relief or attorneys' fees).

Atain's focus on the jury's findings is misplaced. The duty-to-defend analysis concerns only whether Riley's state-court petition alleges facts that potentially pull any of his causes of action within the scope of coverage. *Trinity Universal Ins. Co. v. Cowan*, 945 S.W.2d 819, 829 (Tex. 1997) ("The duty to defend is not affected by facts ascertained before suit, developed in the process of litigation, or by the ultimate outcome of the suit." (citation omitted)); *see GuideOne Elite Ins. Co. v. Fielder Rd. Baptist Church*, 197 S.W.3d 305, 308 (Tex. 2006) ("an insurer's duty to defend is determined by the third-party plaintiff's pleadings, considered in light of the policy provisions, without regard to the truth or falsity of those allegations."); *see also Nokia*, 268 S.W.3d at 491 ("We resolve all doubts regarding the duty to defend in favor of the duty . . . and we construe the pleadings liberally.").

Simply put, while the policy's exclusions are relevant to whether Atain has a duty to indemnify its insured, they matter not in the duty-to-defend analysis. Because Riley's negligence claims are potentially covered under the policy, Atain has an ongoing duty to defend the association and its directors and officers. *See Nokia*, 268 S.W.3d at 491 ("If a complaint potentially includes a covered claim, the insurer must defend the entire suit." (citation omitted)).

### C. Whether Atain Has a Duty to Indemnify its Insureds

Because the court concludes that Atain has an ongoing duty to defend the association and its directors and officers, the court cannot, as a matter of law, reach

19

the duty-to-indemnify question. *See Klein*, 2009 WL 3573849, at *5 ("[W]hen the court determines that there is a duty to defend, a ruling on the duty to indemnify is premature." (quoting *Gehan Homes, Ltd.*, 146 S.W.3d at 846)); *Northfield*, 363 F.3d at 537 (when a duty to defend exists, courts "not only ha[ve] discretion to refuse to decide the duty-to-indemnify issue, but Texas law clearly indicate[s] that [a court] would err by doing so because the underlying litigation was not complete.").

While the evidence presented at trial and the findings of the jury may ultimately fail to trigger coverage, that inquiry must wait until the underlying state lawsuit is fully and finally resolved. Accordingly, prudence compels the court to stay this action until the state-court litigation is complete. *Cf., Chartis Specialty Ins. Co. v. JSW Steel (USA), Inc.*, CIV.A. H-14-1527, 2015 WL 4378366, at *3 (S.D. Tex. 2015) (Miller, J.).

\*\*\*

For the reasons discussed above, the court denies Atain's motion for summary judgment and denies Atain's motion for leave as moot.

It is further ordered that this case is stayed pending final resolution of the state-court litigation.

SIGNED on Galveston Island on this, the 6th day of April, 2020.

_____
JEFFREY VINCENT BROWN
UNITED STATES DISTRICT JUDGE